William POLITE, Alexander Price,
Peter Buxton and Cipriam
Lynch, Plaintiffs,

v.

THE TOWN OF CLARKSTOWN, Town
of Clarkstown Police Department, Officer Michael Doyle, Individually, and
John Does and Jane Does, Police Officers, whose names are presently unknown and within the knowledge of
respondents, individually and as Police Officers of the Town of Clarkstown, Defendants.

No. 98 CIV. 4284(CM).

United States District Court,
S.D. New York.

Nov. 6, 2000.

Mitchell P. Schecter, Spring Valley, NY, for plaintiffs.

Harold Y. MacCartney, Jr., MacCartney, MacCartney, Kerrigan & MacCartney, Nyack, NY, for defendants.

## MEMORANDUM DECISION AND ORDER GRANTING SUMMARY JUDGMENT AS TO DEFENDANT TOWN OF CLARKSTOWN

McMAHON, District Judge.

Plaintiffs William Polite, Alexander Price, Peter Buxton and Cipriam Lynch allege that Clarkstown Police Officers stopped their car, physically abused them and used racial epithets, in violation of their civil rights under 42 U.S.C. § 1983. They bring their claims against the Town of Clarkstown ("the Town"), the Town of Clarkstown Police Department ("the Police"), Officer Michael Doyle in his individual capacity, and certain John and Jane Does, officers of the Clarkstown Police Department who are unknown.

In an order dated August 6, 1999, I granted defendant Doyle's motion to dismiss on the grounds of inadequate service. On that same date, I granted defendant Town of Clarkstown Police Department's motion for summary judgment on the grounds that municipal departments of New York State—such as the Clarkstown Police Department—are not amenable to suit, and no claims can lie directly against them.

I denied a motion for summary judgment to the Town of Clarkstown because it was premature to dismiss the complaint on *Monell* grounds (or on any grounds) at the pre-discovery stage.

For the reasons stated below, I now grant the Town of Clarkstown's renewed motion for summary judgment.

## FACTS PERTINENT TO THE MOTION

On a motion for summary judgment the Court views the facts most favorably to the non-moving party—in this case, the plaintiffs.

On June 22, 1997, at approximately 10:00 p.m., two off-duty volunteer ambulance personnel related over the ambulance frequency to the Clarkstown Police Department dispatch that their vehicle "was almost carjacked," and that the suspect vehicle was a maroon Plymouth Voyager, with license plate number "New York R89–4LY." The ambulance personnel indicated that the suspect vehicle was occupied by at least three black males, and that one of the black males was wearing a white tank top.

The ambulance personnel followed the car from the site of the incident at Smith Street and Route 59 in Nanuet, New York, to the vicinity of Second Avenue, Spring Valley, New York.

The dispatcher broadcast the incident as a larceny attempt, a possible attempted carjacking, and described the suspects as four black males in a maroon Plymouth Voyager, with license plate number "R89–4LY." Officer Fred Parent received the call, and observed a car of that description heading southbound in Bethune Boulevard in Spring Valley. Officer Parent activated his lights to initiate a car stop.

The plaintiffs saw the lights, but thought the officer was attempting to pass rather than to pull them over. Not realizing that the police intended for them to pull over, Plaintiff William Polite continued to drive on Bethue Boulevard. After he turned onto Clinton Street with police following, Polite pulled over.

Peter Buxton was in the passenger seat; Price was in the next row of van seats; and Lynch was in the back. Officer Parent directed Polite to throw the car keys out the window, which he did.

Plaintiffs allege that they remained in the vehicle for a period of time after being

pulled over, while more than a dozen police officers surrounded the car with guns drawn. The officers shouted conflicting commands to the plaintiffs to get out of the car, or to stay put.

The plaintiffs contend that many officers made racial threats and threats of violence during the period subsequent to the stop. The police officers allegedly called them "niggers," and placed handguns and rifles to their heads and threatened to pull the trigger. Defendants have acknowledged that one officer shouted racial epithets at the plaintiffs.

Although they were getting conflicting instructions, plaintiffs eventually got out of the van and lay down on the ground. Buxton claims that when he lay down on the ground, with arms in the air, the police slammed their knees on his back, and one officer placed a nightstick against his neck, forcing his head down into the grass. He was put into a police car, after an officer banged his head on the top of the car. (Buxton Dep. at 72.) The police led the other three Plaintiffs to police cars where each was held for a period of approximately one hour for investigation and show-up identification.

The police eventually removed their handcuffs and said it was a misunderstanding. The plaintiffs subsequently were released, but were detained at the scene of the stop for nearly two hours.

Buxton was taken to Good Samaritan Hospital because he felt pain in the lower back and neck. He was later diagnosed has having suffered from a cervical sprain. The other plaintiffs suffered minor injuries.

A Police Department Internal Affairs investigation was commenced to review the incident. Such an investigation is required by the Clarkstown Police Department ("CPD") Manual in complaints involving racial epithets and excessive force. The investigation confirmed that one of the officers involved in the incident had used an improper ethnic comment, (Kilduff Aff.

¶ 8), but found that none had used excessive force against the suspects. The officer who made the improper comment—unnamed in Mr. Kilduff's affidavit—was suspended without pay for two weeks and was required to undergo cultural sensitivity training. (Id.)

## DISCUSSION

### 1. *Plaintiffs' Complaint*

In their complaint, Plaintiffs state four causes of action. The first cause of action claims that Defendants falsely arrested Plaintiffs, thus depriving them of liberty in violation of the rights guaranteed by the fourth and fourteenth amendments to the United States Constitution and by the Civil Rights Act, 42 U.S.C. § 1983. (Compl.¶ 24.) Plaintiffs' second cause of action alleges that Defendants violated their right to be free from racially motivated remarks. (*Id.* ¶ 26.) The third cause of action claims both emotional and psychological damages, and that Defendants subjected Plaintiffs Alexander Price and Peter Buxton to excessive physical force. (*Id.* ¶ 28–29). The fourth cause of action alleges that the Municipal Defendants (i) failed to implement policies sufficient to prevent racially motivated police activity, (ii) failed to take reasonable steps to see that town police officers were sensitive to race issues, and (iii) failed to properly investigate and reprimand those officers responsible. (*Id.* ¶ 31.)

### 2. *Defendant Town of Clarkstown's Renewed Motion for Summary Judgment*

The Defendant Town of Clarkstown's Motion for Summary Judgment is granted.

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if, based on the record as a

whole, a reasonable jury could find in favor of the non-movant. *See Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. In making its determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When opposing a motion for summary judgment, it is not sufficient for the non-moving party to present evidence that is conclusory or speculative, with no basis in fact. *See Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505. While Plaintiffs need not produce direct evidence of an alleged civil rights violation, they must be able to produce evidence, in admissible form, that is more than surmise and speculation which is based on their own subjective beliefs. *See Matsushita,* 475 U.S. at 576, 106 S.Ct. 1348.

### 3. *Standard to Recover under 1983 Against a Municipality*

■ To recover against a municipality in a Section 1983 action, the plaintiff must establish that (1) the municipality had a policy or custom that was responsible for the alleged deprivation of constitutional rights, or (2) that a failure of supervision or lack of training is "so severe as to reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation of plaintiff's constitutional rights." *Monell v. Dept. of Social Servs. of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

#### a. *Custom or Policy*

■ There is insufficient evidence to establish a genuine issue of material fact as to whether the Town of Clarkstown had a policy or custom of racial hostility toward blacks. To demonstrate a custom or policy, plaintiffs point to (1) the fact that there was not one, but twelve police officers on the scene who allegedly used racial invective—although the exact number of offending officers is unknown; (2) a case arising from a November, 1989 traffic incident in which Clarkstown police officers were found liable for malicious prosecution, brutality and making racial slurs; and (3) the resignation of a Clarkstown Police Captain in 1987 for being overheard using allegedly racist language. These isolated and unconnected incidents, two of which happened over ten years ago, are insufficient for me to find a policy or custom that could create municipal liability under *Monell.*

■ The officers similarly were not final policymakers who would create liability for the Town of Clarksburg. If no custom or official policy can be demonstrated, municipal liability may also be imposed where a final policymaker of the municipality is personally responsible for the constitutional violation. *See McMillian v. Monroe County,* 520 U.S. 781, 784–86, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). A final policymaker is an official of a municipality who "speak[s] with final policymaking authority" for the municipality "in a particular area, or on a particular issue." *Id.* at 785, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1. The question of who qualifies as a final policymaker is one of state law. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). The *Praprotnik* Court noted that States have extremely wide latitude in determining the form that local government takes. *See id.* at 925. It concluded that "state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Id.*

Applying the Supreme Court's holding in *Praprotnik* to the matter at bar, the

Town Board and the Police Commission are the only entities which may be considered responsible for establishing rules and regulations pertaining to police conduct. New York statutory law, which addresses the powers and duties of town policemen, expressly states that town policemen: "... shall be subject to the general authority and direction of the town board and to such orders and regulations as the town board may prescribe, not inconsistent with the law." N.Y. Town Law § 39 (McKinney 1989 & Supp.).

Town Law § 150, which addresses the establishment of town police departments, expressly provides that:

> ... When either of such boards of police commissioners shall have been established ... such board of police commissioners ... shall have and exercise all powers relative to police matters conferred upon the town board pursuant to this article. The town board may by resolution at any time abolish such police commission ... and thereupon the town board only shall exercise the powers conferred upon it by this article.

N.Y. Town Law § 150 (McKinney 1989 & Supp.). The Code of the Town of Clarkstown does not contradict this. *See* Code of the Town of Clarkstown § 45-1 (setting forth authorization for town police to give and receive assistance from other counties).

Plaintiffs cannot assert municipal liability against the Town of Clarkstown under § 1983 based on the status of police officers as policymaking officials. The state and local law clearly establish that the Town Board and Police Commission are the final policymaking officials with regard to the establishment of any rules and regulations pertaining to police conduct.

### b. *Failure to Train*

■ Plaintiffs also cannot satisfy the "deliberate indifference" standard to create municipal liability under a theory of a failure to train. *See City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (recognizing liability only where inadequate training amounts to "deliberate indifference" to the rights of those with whom municipal employees will come into contact). In *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir. 1992), the Second Circuit set forth a three-part test to demonstrate that a municipality's failure to train amounted to "deliberate indifference" of the rights of citizens: (1) that a "policymaker knows 'to a moral certainty'" that employees will confront a given situation; (2) that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* (citing *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

■ The Plaintiffs have not satisfied this three—part test to create municipal liability for a failure to train the Clarkstown Officers. Plaintiffs are alleging that the Police Department failed to prevent racially-motivated activities; failed to promote racial sensitivity; failed to properly investigate the incident at issue; and failed to properly investigate the incident at issue. (Pl.Exh. A). Other than the incident in question, however, the Plaintiffs have submitted no evidence that there was inadequate training or supervision, let alone any "deliberate indifference" to the rights of those with whom the officers would come into contact. *See City of Canton,* 489 U.S. at 388, 109 S.Ct. 1197.

To the contrary, pursuant to General Order 230 of the Town of Clarkstown Police Department, all personnel are required to be assigned to various training sessions periodically. These include training on cultural diversity and sensitivity, and the reasonable use of physical force, deadly physical force, and firearms. This training is supplemented and updated on a

"continuous" basis. (Kilduff Aff. ¶ 11.) Plaintiff introduces no evidence that General Order 230 has not been complied with.

Because plaintiffs have offered insufficient evidence to create a genuine issue of whether Clarkstown's custom, policy or training amounted to a constitutional violation, Defendant Town of Clarkstown's motion for summary judgment is granted.

This constitutes the decision and order of this Court.